IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil No.

| | |
|---|---|
| DeAna Shenece Burgess, <br> Plaintiff, <br> <br> v. <br> <br> First Advantage Background Services Corp., <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) **Complaint and Demand for Jury Trial** <br> ) <br> ) <br> ) <br> ) |

Plaintiff, DeAna Burgess ("Plaintiff"), by and through the undersigned counsel, hereby submits her Complaint and Demand for Jury Trial ("Complaint") against Defendant First Advantage Background Services Corp. ("Defendant" or "First Advantage"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

## JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendant transacts business in this District; Defendant purposefully avails itself of the protections of this District; and Defendant regularly directs business at this District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff, DeAna Burgess, is a natural person who resides in Charlotte, North Carolina, within the confines of Mecklenburg County, North Carolina. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant, First Advantage, is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). First Advantage is incorporated in Florida, and its principal place of business is located at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia, 30328. First Advantage can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

6. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

7. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

8. In early 2022, Plaintiff was overjoyed to welcome her son into the world. After an extended stay in the newborn intensive care unit, Plaintiff was happy to bring her son home.

9. Fortunately for Plaintiff, her employment at the time allowed her to work from home, meaning she was able to fulfill her job's obligations while also tending to her newborn.

10. However, Plaintiff learned in or around February 2022 her employer was requiring all employees to return to the office in person full-time.

11. This was devastating news for Plaintiff. Her newborn continued to require near-constant nurturing and care, and as a single mother, it simply was untenable for Plaintiff to return to the office.

12. As such, Plaintiff began a serious pursuit for new employment, with her goal being a position which allowed her to work from home full-time.

13. Plaintiff diligently applied for new employment positions, completing more than a dozen applications and going through two unsuccessful interviews.

14. Plaintiff was thrilled when on or about April 14, 2022, she received an offer from non-party Lincoln Financial Group ("Lincoln") to work as a Life Customer Care Associate.

15. Moreover, Plaintiff was deeply relieved. Following the birth of her son, Plaintiff suffered from postpartum depression, which was exacerbated by the stress of worrying about whether and when she would find suitable employment which allowed her to work from home.

16. As part of Lincoln's onboarding process, Plaintiff was informed she was required to consent to a background check prepared by First Advantage. Her offer letter included, in relevant part: "If you are unable to complete [the background check authorization] in a timely manner, it may impact your start date at Lincoln Financial Group."

17. Plaintiff's start date, as detailed in the Lincoln offer letter, was scheduled to be May 9, 2022.

18. Given Plaintiff's ongoing household bills and bills associated with her newborn, Plaintiff wanted to mitigate any lapse in paychecks to the extent she could. Accordingly, on or about April 14, 2022, Plaintiff consented to a background check prepared by First Advantage.

19. On or about April 22, 2022, Plaintiff received a phone call from a Lincoln employee, in which the Lincoln representative informed Plaintiff that as a result of information

contained in the background check prepared by First Advantage, Plaintiff was no longer eligible to work for Lincoln.

20. Plaintiff was absolutely distraught and in a complete panic. She had been through numerous background checks in the past – including FBI fingerprinting – none of which had ever resulted in a job denial or adverse actions against Plaintiff.

21. Plaintiff racked her brain to try and think of what First Advantage could possibly have reported about her to cause Lincoln to rescind her offer but could not think of anything.

22. The same day, on or about April 22, 2022, Plaintiff received a copy of the background check First Advantage had prepared about her. She immediately recognized a glaring mistake on the report.

23. In the criminal records section of the report, First Advantage was inaccurately reporting a criminal record concerning Plaintiff. Specifically, First Advantage reported a criminal record for the charge of "DRIVING UNDER THE INFLUENCE," with a file date of August 9, 2013 (Case No. 26892GH).

24. Plaintiff was confused and outraged. First Advantage's reporting of this record was patently inaccurate.

25. Plaintiff was never charged with "DRIVING UNDER THE INFLUENCE."

26. In fact, on August 9, 2013, Plaintiff had been charged with Driving Under **Suspension**.

27. Moreover, the First Advantage report included, under a field labeled "Disposition," the word "GUILTY."

28. This too, was inaccurate. In fact, per a Disposition Sheet provided by the Lake City Municipal Court, Plaintiff's charge for Driving Under **Suspension** had been *nol prossed*.

4

29. Upon information and belief, *nol prossed* is an abbreviated version of the Latin phrase *nolle prosequi*, directly translating to "not to wish to prosecute." In short, this term is used by courts and prosecutors to denote when a criminal charge is no longer being prosecuted.

30. In other words, for purposes relevant to the FCRA, a case bearing the disposition *nol prossed* has been dismissed, resulting in a non-conviction.

31. Under the FCRA, criminal records resulting in a non-conviction may not be reported in a consumer report if the date of the arrest antedates the report by more than seven years.

32. In Plaintiff's case, her criminal record resulted in a non-conviction, and the file date of August 9, 2013 antedated the report by more than seven (7) years. Therefore, First Advantage's reporting of this criminal record in Plaintiff's consumer report is itself a violation of the FCRA.

33. Upon learning of First Advantage's inaccurate reporting, Plaintiff immediately contacted First Advantage by telephone to notify it that her background check contained inaccurate information.

34. To Plaintiff's dismay, First Advantage notified Plaintiff that it had up to thirty (30) days to conduct its reinvestigation.

35. Plaintiff anxiously awaited First Advantage's response. As each day passed, Plaintiff grew more and more concerned that First Advantage would fail to correct its reporting before Plaintiff's anticipated start date of May 9, 2022.

36. On or about April 29, 2022, Plaintiff communicated via email with a Lincoln representative and notified the representative that she had submitted a dispute to First Advantage.

37. The following week, on or about May 4, 2022, the Lincoln representative with whom Plaintiff had been communicating informed Plaintiff that if Plaintiff's background check

5

was not corrected by the following day at noon, Plaintiff's start date would be delayed from May 9, 2022, until June 13, 2022.

38. Unfortunately for Plaintiff, the following day came and went without a response from First Advantage.

39. Accordingly, Plaintiff was unable to begin working on May 9, 2022. Instead, her start date would be pushed back until at least June 13, 2022. The frustration of these circumstances was made worse by the fact that her employment had been delayed through no fault of her own.

40. During the thirty (30) day period following Plaintiff's dispute, she frequently and obsessively checked her email inbox, desperate to see an email from First Advantage notifying Plaintiff her report had been corrected.

41. Plaintiff suffered from issues being able to fall asleep, as her mind raced every night. She developed noticeable bags under her eyes as a result.

42. Unable to sleep, Plaintiff spent many nights staying up, reading on the internet about horror stories and details in lawsuits from other consumers who had suffered similar fates at the hands of First Advantage.

43. In one such story, Plaintiff learned that a particular consumer had his criminal record information reported inaccurately multiple times by First Advantage. As a result of reading stories like this, Plaintiff grew more and more concerned that First Advantage would fail to correct its erroneous reporting entirely.

44. Plaintiff felt a general malaise during this time period, and actively avoided talking to her friends and family members. In short, she felt depressed and did not want to deal with the world.

45. Plaintiff also suffered from loss of appetite, as she was preoccupied during nearly every waking moment while she waited for First Advantage's response.

46. As detailed herein, Plaintiff suffered from postpartum depression following the birth of her son. These circumstances severely exacerbated her condition, causing her extreme stress and distress.

47. Moreover, Plaintiff gave birth to her son early due to blood pressure issues, which had subsided following his birth. However, after the stress she endured following First Advantage's inaccurate reporting, her blood pressure spiked, forcing her to take blood pressure medication.

48. Finally, on or about May 20, 2022, Plaintiff confirmed that First Advantage had corrected its inaccurate reporting, and sent Plaintiff a copy of the corrected background check.

49. Upon review, Plaintiff confirmed that First Advantage had removed all references to any criminal records concerning Plaintiff.

50. First Advantage's removal of the inaccurate information from Plaintiff's consumer report is a tacit admission that it reported inaccurate information, and a tacit admission that it reported information prohibited by the terms of the FCRA.

51. Throughout this ordeal, Plaintiff could not understand how or why First Advantage could report such blatantly inaccurate information. The charges First Advantage had confused, "Driving Under the Influence" and "Driving Under Suspension," are completely different charges involving wholly different allegations of wrongdoing.

52. Had a human being reviewed the case documents for the "Driving Under Suspension" charge filed against Plaintiff, the human being would have known this charge should not be reported on Plaintiff's consumer report as "Driving Under the Influence."

7

53. Unfortunately, upon information and belief, First Advantage prepares its background checks by relying upon information generated via automated, database-driven methods rather than conducting direct, manual searches of public record information and reviewing that information manually.

54. Upon information and belief, information generated from such methods is often fraught with inaccuracies and/or out-of-date information.

55. Such inaccurate reporting is precisely what occurred with respect to Plaintiff at the hands of First Advantage.

56. The only things which prevent First Advantage from implementing procedures wherein a human being is involved in verifying the information reported is accurate are the facts that doing so would take more time, be more costly for First Advantage, and would therefore be less profitable for First Advantage.

57. Therefore, upon information and belief, First Advantage fails to maintain and employ reasonable procedures to assure maximal accuracy of the consumer reports and consumer information it sells to third parties as required by the FCRA.

58. First Advantage is aware its consumer reporting services are used to make significant consumer decisions concerning employment.

59. First Advantage is further aware its procedures frequently result in the reporting of inaccurate information, evidenced by First Advantage's involvement in multiple class action lawsuits.

60. Regardless, First Advantage chooses to continue to rely on its unreasonable procedures precisely because of the substantially high level of profitability associated with automated reporting as compared with manual review and reporting of consumer information.

61. As detailed herein, the charge of "Driving Under Suspension" should have never been reported to Plaintiff's new employer. This record was a non-conviction criminal record which antedated the report by more than seven (7) years.

62. Plaintiff never intended to so much as share the existence of her "Driving Under Suspension" charge with her employer.

63. Despite the fact that this charge is significantly less severe than the "Driving Under the Influence" charge inaccurately reported by First Advantage, Plaintiff was still humiliated by the fact her employer learned about a criminal charge involving Plaintiff that should have never been reported in the first place.

64. Upon information and belief, it is unreasonable to maintain procedures that are designed to require consumers to "police" their own background reports to ensure accurate information is reported, and to ensure consumer reporting agencies like First Advantage fulfill their legal obligations.

65. Such procedures place the burden on consumers to correct inaccurate information contained in their background reports after they have already been harmed, rather than First Advantage simply reporting accurate information in the first place.

66. Such procedures also serve to save First Advantage significant operational costs which would otherwise be associated with human review of public record information. By forcing consumers to dispute inaccurate information – rather than confirming such information is accurate prior to reporting it – First Advantage avoids higher personnel costs and related expenses.

67. In short, upon information and belief, these procedures are specifically structured to maximize profits for First Advantage and in fact allow for the inaccurate reporting of consumer information as an acceptable, perhaps even expected, outcome.

68. Procedures like these are directly contradictory to the purposes of the FCRA, which include, inter alia, ensuring accuracy and fairness in consumer reporting.

69. As a result of First Advantage's shoddy procedures, Plaintiff lost income related to a full month of work. Moreover, Plaintiff will now suffer delays in her employment benefits, like paid time off ("PTO") and insurance benefits.

70. As a direct result of First Advantage's conduct, action, and inaction, Plaintiff has suffered actual damages, including but not limited to: lost wages, damage to reputation, emotional distress, anxiety, frustration, anger, embarrassment, humiliation, sleepless nights, loss of appetite and wasted time.

## COUNT I
### First Advantage's Violations of 15 U.S.C. § 1681e(b)

71. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

72. The FCRA requires consumer reporting agencies, like First Advantage, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. 15 U.S.C. § 1681e(b).

73. First Advantage violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report.

74. Upon information and belief, First Advantage has been sued or has received disputes from other consumers in the past who have alleged its procedures were unreasonable and violative of the FCRA.

75. Therefore, First Advantage had actual notice of its deficient procedures.

76. In this case, however, First Advantage received actual notice its procedures were unreasonable as applied to Plaintiff.

77. It is wholly unreasonable to maintain procedures which result in inaccurate criminal record information being reported.

78. Specifically, it was wholly unreasonable for First Advantage to maintain procedures which allowed a charge for "Driving Under Suspension" to be reported to Plaintiff's prospective employer as a charge for "Driving Under the Influence."

79. As a result of First Advantage's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

80. First Advantage's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, First Advantage is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

81. Alternatively, First Advantage's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, First Advantage is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

82. In any event, First Advantage is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### First Advantage's Violations of 15 U.S.C. § 1681c

83. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

84. The FCRA prohibits consumer reporting agencies, like First Advantage, from reporting information in a consumer report if the information is an adverse item, other than records

of convictions of crimes, which antedate the report by more than seven (7) years. 15 U.S.C. § 1681c(a)(5).

85. First Advantage violated 15 U.S.C. § 1681c(a)(5) by preparing a consumer report concerning Plaintiff which reported information that was adverse, antedated the report by more than seven (7) years, and was not a conviction of a crime.

86. First Advantage had the ability to review the public record and determine it was reporting a record which was not reportable by law.

87. Therefore, First Advantage had actual notice of this violation.

88. As a result of First Advantage's reporting of information prohibited by the FCRA, Plaintiff has suffered statutory and actual damages as detailed herein.

89. First Advantage's violations of 15 U.S.C. § 1681c(a)(5) were willful. Therefore, First Advantage is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

90. Alternatively, First Advantage's violations of 15 U.S.C. § 1681c(a)(5) were negligent. Therefore, First Advantage is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

91. In any event, First Advantage is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

92. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DeAna Burgess, respectfully requests judgment be entered against Defendant First Advantage, for the following:

12

A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and

E. All pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: May 24, 2022,

> */s/Dawn McCraw*
> Dawn McCraw
> North Carolina Bar No. 54714
> Price Law Group, APC
> 8245 N. 85th Way
> Scottsdale, AZ 85258
> T: (818) 600-5585
> F: (818) 600-5485
> E: dawn@pricelawgroup.com
>
> *Attorney for Plaintiff*
> DeAna Shenece Burgess